COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia

ANNE EDWARDS HARTLEY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1303-22-2                       JUDGE DANIEL E. ORTIZ
                                                    FEBRUARY 13, 2024

BOARD OF SUPERVISORS OF
  BRUNSWICK COUNTY, VIRGINIA


FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
W. Allan Sharrett, Judge

John M. Janson for appellant.

Andrew R. McRoberts (Christopher M. Mackenzie; Paul C.
Jacobson; Sands Anderson PC, on brief), for appellee.


Appellant Anne Hartley challenges the decision of the Brunswick County Board of

Supervisors to deny her application to downzone four acres of her property from a business

designation to an agricultural one.  Finding that the Board put forward "some evidence of

reasonableness," sufficient to make the proper zoning designation "fairly debatable," the circuit

court dismissed Hartley's challenge on summary judgment.  On appeal, Hartley asserts that the

Board's decision was unreasonable because it conflicted with the Brunswick County

comprehensive plan, the Board failed to review the statutory factors laid out in Code

§§ 15.2-2283 and -2284, it violated her landowner rights, and it was made to support a false

narrative about local zoning that the Board relied on to upzone a neighboring property.  She also

argues that the circuit court abused its discretion in granting the Board's motion for summary

_____
* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

judgment because she had insufficient time to respond to the motion and to develop her claims through discovery. Because Hartley failed to show that the existing business designation was wholly unreasonable, the Board put forward sufficient evidence of reasonableness, and the circuit court did not abuse its discretion in denying her motion to continue, we affirm the judgment of the circuit court below.

BACKGROUND[1]

Appellant Hartley owns about 69 acres in Ebony, along State Route 626. The area surrounding Hartley's property includes two local general stores—Ebony General and the 903 Race-In—Homestead Antiques, the Ebony Fire Department, the Ebony Post Office, Carroll Family Logging, and several historic homes.[2] Ebony is a small, rural community that is primarily zoned as agricultural ("A-1") based on the Brunswick County Comprehensive Plan 2037. The plan lays out the County's vision to "be a regional leader in small business development, progressive industry, livable neighborhoods, sustainable agriculture, and extraordinary tourism experiences." The County also aims to "be a destination for specialized commerce and employment with thriving business parks and downtown business districts in [designated towns]." It hopes to create an "inviting community" for people who "cherish the community's heritage and history, friendly atmosphere, comfortable lifestyles, exceptional education system, scenic landscapes, prized agricultural soils, and outstanding parks, trails, rivers and lakes." The plan, spanning over one hundred pages, is organized around four directives:

---

[1] This appeal follows the circuit court's grant of summary judgment. We thus review the facts based only on the pleadings, attached exhibits, and party admissions. *See* Rule 3:20. The pleadings also include the legislative record, incorporated by the Board's successful motion craving oyer, which Hartley does not challenge here. *See Byrne v. City of Alexandria*, 298 Va. 694, 700-02 (2020).

[2] The surrounding businesses variously operate in agricultural zones either as of right or with conditional use permits, or in business zones, often with proffered conditions on permitted uses.

(1) resilient communities; (2) dynamic economic growth; (3) preserved natural and cultural heritage; and (4) managed land use and development.

The comprehensive plan mentions Ebony only a few times. The plan groups Ebony with Gasburg and Lake Gaston as part of the "South County Planning Area," a "general growth area[]" that "continue[s] to represent good direction for land development in the future." On the current and future uses map, Ebony appears in an agricultural area, though the existing uses map reflects a few business zones at the heart of Ebony. On the future uses map, nearby Gasburg is designated for "[c]ommunity [b]usiness" uses and marked as a "[c]orridor [b]usiness [o]pportunity," which "may include grocery stores, lodging, convenience/gas stations," and similar commercial uses.

Hartley has submitted three applications to rezone portions of her property over the years. In 1995, Hartley applied ("1995 application") to amend the zoning ordinance to change part of her property from an A-1 to a business ("B-1") designation in order to operate an antique business and garden shop in a historic post office building ("1995 property"). That business never materialized, and the 1995 property has since been carved out from Hartley's 69 acres and sold. Hartley asserts that the 1995 property was never formally rezoned, as the approval was "contingent upon approval by the County Health Department that the proposed 0.50 acre of land . . . is sufficient in size to provide for the installation of a well and septic system" and that condition was never satisfied. The Brunswick County zoning map was updated in 2022 to reflect that the parcel had been changed to B-1.

In 2003, Hartley applied ("2003 application") to rezone a different four-acre portion of her property ("subject property") to B-1 to operate a "non-invasive, discrete building for unloading electric boats and storage" related to her North Carolina-based boat business. Hartley concedes that at the time, she believed the subject property was "appropriate" for the "discreet

and non-invasive function of serving as a location for delivery and storage of electric boats." The Board, appellee here, approved the application ("2003 decision"), upzoning the property from A-1 to B-1 "to operate and maintain a boat business." The approval included no conditions, except for the requirement to obtain zoning and building permits before construction. The subject property was never used for the boat business as planned.

In January 2020, the Board approved the upzoning of a neighboring parcel from A-1 to B-1 for the development of a Dollar General ("Dollar General property").[3] Hartley asserts that only while opposing the upzoning of the Dollar General property did she discover the implications of the 2003 application and the possibility that the Board was leveraging the B-1 designation of her property to justify further commercial development in her neighborhood. Thus, on February 5, 2020, Hartley applied to amend the zoning ordinance to revert the subject property back to an A-1 designation ("downzoning application").

Staff for the Brunswick County Planning Commission noted that "[t]he subject property is partially wooded with an existing vacant two (2) bedroom single family dwelling." The staff report also noted that "[B-1] and [A-1] [z]oning with non-conforming uses surround the subject property." As to the property itself, the staff stated:

> In February of 2003, Mrs. Hartley was approved by the Board of Supervisors to rezone 4.00 acres . . . to . . . [B-1] to operate a boat business to include unloading boats, assembly of boats, boat maintenance, and boat storage. Zoning and [b]uilding [p]ermits were never obtained to construct the proposed boat business. . . . The existing Zoning/Land Use map indicates that the subject property is in the Business (B-1) District. The Future Land Use Map of the Comprehensive Plan designates the subject property for future Agricultural/Residential use.

---

[3] Hartley appeals the Board's decision to upzone the Dollar General property in the companion case, *Hartley v. Board of Supervisors of Brunswick County, Virginia*, ___ Va. App. ___ (Feb. 13, 2024), decided this day. Though we note many legal similarities between the two cases, because we find that the factual circumstances are distinct, we deny the Board's motion to consolidate the two cases.

The staff recommended denying the downzoning application, noting the pattern of commercial development in the area and the "good planning practice" of having some commercial uses near residential areas. Staff also found that the downzoning application was "in general accord with the . . . Comprehensive Plan 2037 however in conflict with the current development pattern" that had grown out of earlier versions of the comprehensive plan. The Planning Commission denied the downzoning application by a 7-2 vote. Following a public hearing at which Hartley gave testimony, the Board ultimately voted 3-2 to deny the downzoning application in October 2020 ("downzoning denial").

In November 2020, Hartley appealed the downzoning denial to the circuit court. The Board responded with a motion craving oyer to incorporate the legislative record into Hartley's pleadings and a demurrer. The Board also filed a plea in bar, asserting the statute of limitations to seek dismissal of any part of Hartley's claims that challenged the 2003 zoning decision directly. The circuit court granted the motion craving oyer and the plea in bar. The court also partially sustained the demurrer, narrowing the grounds on which Hartley's claim could proceed to arguments about the denial of her landowner rights, a false narrative, and the failure to align with the comprehensive plan. On March 10, 2022, the Board filed a notice of hearing, requesting a pretrial conference and a hearing on a motion for summary judgment which it had not yet filed. Soon after, Hartley filed a praecipe that the matter had matured for trial, requesting a jury trial.

On May 12, 2022, the Board moved for summary judgment. Hartley moved for a stay of summary judgment proceedings and a motion for an order sequencing discovery. The circuit court held a hearing on the various motions on June 3, 2022, in which it denied the motion for a stay and reserved judgment on summary judgment pending further briefing.[4] Following briefing

---

[4] We note that the briefs of both parties discuss statements made during the June 3, 2022 hearing. Because the transcript of the hearing was not timely filed, we may not consider it here.

by both parties, the circuit court granted the Board's motion for summary judgment. Hartley appeals.

ANALYSIS

I. Reasonableness of the Downzoning Denial

Hartley challenges the circuit court's grant of summary judgment for the Board, arguing that the downzoning denial was invalid for failure to follow statutory zoning procedures and substantively unreasonable. In evaluating a motion for summary judgment, a court may review only "the pleadings, the orders, if any, made at a pretrial conference, [and] the admissions, if any, in the proceedings." Rule 3:20. Summary judgment is not appropriate if "any material fact is genuinely in dispute." *Id.* On appeal, "we review the record applying the same standard the trial court must adopt in reviewing a motion for summary judgment, accepting as true 'those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason.'" *Klaiber v. Freemason Assocs., Inc.*, 266 Va. 478, 484 (2003) (quoting *Dudas v. Glenwood Golf Club, Inc.*, 261 Va. 133, 136 (2001)).

---

*See* Rule 5A:8(a) ("The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court no later than 60 days after entry of the final judgment."); *Smith v. Commonwealth*, 32 Va. App. 766, 771 (2000).

The absence of the transcript, however, does not affect our ability to evaluate the merits of Hartley's claims on appeal. "If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to." *Smith*, 32 Va. App. at 771 (alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). Yet because our review of a grant of summary judgment is limited to the pleadings, exhibits, and admissions, and the circuit court's reasoning is memorialized in a written opinion letter and order, a transcript is not indispensable to our review of the court's grant of summary judgment (Hartley's assignments of error one, four, five, six, and seven). *See id.*; *see also* Rule 3:20 (laying out summary judgment standard). Further, Hartley's arguments regarding the timing of summary judgment are laid out in her motion for a continuance and stay and the factual timeline of the parties' filings are apparent from the record. We may thus consider her arguments regarding the timing of the court's summary judgment order (assignments of error two and three), notwithstanding the absence of a transcript. *See Smith*, 32 Va. App. at 771.

- 6 -

Legislative actions, such as the grant or denial of an application for rezoning, are presumed to be reasonable both upon review before the circuit court and upon appeal. *See Bd. of Supervisors v. Lerner*, 221 Va. 30, 34 (1980). Reasonableness, in turn, depends on whether "the matter in issue is fairly debatable"—whether objective and reasonable people may logically arrive at different conclusions about the correct result. *Bd. of Supervisors v. Robertson*, 266 Va. 525, 532 (2003) (quoting *Lerner*, 221 Va. at 34). The Supreme Court has summarized this reasonableness standard in a burden-shifting framework:

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the [legislative action] "must be sustained." If not, the evidence of unreasonableness defeats the presumption of reasonableness and the [legislative action] cannot be sustained.

*Bd. of Supervisors v. Snell Constr. Corp.*, 214 Va. 655, 659 (1974). When a property owner affirmatively seeks rezoning, rather than advocating simply for a return to the status quo, they bear "the burden . . . to prove both the unreasonableness of the current zoning classification and the reasonableness of the proposed use." *Bd. of Supervisors v. Int'l Funeral Servs., Inc.*, 221 Va. 840, 843 (1981); *see also City Council v. Harrell*, 236 Va. 99, 102 (1988) ("[T]o make a prima facie showing that the denial of a conditional use permit was unreasonable, a landowner must show not only that the use he requests is reasonable but that the existing zoning ordinance, as applied to his land, is unreasonable."). Under the fairly debatable standard, "the question is whether there is *any evidence in the record sufficiently probative* to make a fairly debatable issue of the Board's decision." *Town of Leesburg v. Giordano*, 280 Va. 597, 608 (2010) (emphasis added) (quoting *Bd. of Supervisors v. Stickley*, 263 Va. 1, 11 (2002)). This same standard applies on motions for summary judgment. *See Newberry Station Homeowners Ass'n, Inc. v. Bd. of Supervisors*, 285 Va. 604, 626 (2013). Ultimately, "when . . . the existing zoning and the

- 7 -

proposed zoning are both appropriate for the property in question, the legislative body has the prerogative to choose the applicable classification, not the property owner or the courts." *City Council v. Wendy's of W. Va., Inc.*, 252 Va. 12, 18 (1996). Yet, legislative action taken "in violation of an existing ordinance" or other binding source of law is by definition arbitrary and capricious and may not be sustained by a court. *Newberry Station*, 285 Va. at 621.

Unlike legislative judgments, we review questions of statutory interpretation de novo. *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020).

### A. Role of the Comprehensive Plan

Hartley first asserts that the downzoning denial was unreasonable as a matter of law because it deviated from the comprehensive plan. Code § 15.2-2223 directs each local planning commission to prepare a comprehensive plan "with the purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the territory." Code § 15.2-2223(A). Such plan "shall be general in nature." *Id.* The Code also provides that a comprehensive plan "shall control the general or approximate location, character and extent of each feature shown on the plan." Code § 15.2-2232(A). Feature is not specifically defined in the statute. *See id.*; *see also* Code § 15.2-2201 (definitions section). Yet the statute continues by stating that "unless a feature is already shown on the adopted master plan . . . no street or connection to an existing street, park or other public area, public building or public structure . . . shall be constructed, established or authorized" without the planning commission confirming that it is "substantially in accord" with the comprehensive plan. Code § 15.2-2232(A). Thus, "[i]n the language of the Code, these public facilities are known as 'features.'" *Stafford Cnty. v. D.R. Horton, Inc.*, 299 Va. 567, 570 (2021).[5] As applied to private facilities, a comprehensive plan is generally "a

---

[5] A letter opinion of the Attorney General similarly clarifies that "[a] comprehensive plan . . . acts as an indirect instrument of land use control with respect to [public facilities]. The

guideline for the development and implementation of a zoning ordinance" and "does not, by itself, act as an instrument of land use control." 1987-88 Op. Va. Att'y Gen. 212, 213. This also aligns with the language of Code § 15.2-2284, which states that "[z]oning ordinances and districts shall be drawn and applied *with reasonable consideration* for the existing use and character of property, the comprehensive plan," and fifteen other factors. (Emphasis added). The "minimum standards of the [c]omprehensive [p]lan may be only guidelines and not requirements to be applied inflexibly," while the local zoning body has "discretion to decide whether to adhere to those standards or to follow some other reasonable approach" in evaluating individual rezoning applications.[6] *Lerner*, 221 Va. at 37.

Hartley asserts that a higher standard of review should apply here, because she incorrectly reads Code § 15.2-2232 to require private facilities—here, her own property—to be "substantially in accord" with the comprehensive plan.[7] She also argues that if a proposed private facility is not "substantially in accord" with the comprehensive plan, the County must amend the plan under Code § 15.2-2229 before approving the zoning amendment. This is

location, charter and extent of such public facilities must be submitted and approved" based on consistency with the comprehensive plan. 1987-88 Op. Va. Att'y Gen. 212, 213 (citation omitted). Though such opinions are "not binding on this Court, an Opinion of the Attorney General is 'entitled to due consideration.'" *Beck v. Shelton*, 267 Va. 482, 492 (2004) (quoting *Twietmeyer v. City of Hampton*, 255 Va. 387, 393 (1998)).

[6] Hartley also argues that *Riverview Farm Associates Virginia General Partnership v. Board of Supervisors*, 259 Va. 419, 428 (2000), shows that comprehensive plans are binding even as to private development. However, that case only shows that under Code § 15.2-2297(A)(viii), any *proffered conditions* made with a rezoning application must be consistent with the comprehensive plan. *See id.* This case involves no proffered conditions, and thus *Riverview* is not applicable.

[7] At oral argument, Hartley also proposed that the entire town of Ebony might be considered a statutory "feature" which must be developed in substantial accord with the comprehensive plan. While the record makes clear that Ebony is a beautiful, scenic community, deeply beloved by its residents, such an interpretation is inconsistent with the statutory language of Code § 15.2-2232.

incorrect.  Rather, alignment with the comprehensive plan is only one of several statutory factors that a legislative body must consider in amending its zoning ordinance.  *See* Code § 15.2-2283. Failure to align with the comprehensive plan does not render a zoning amendment arbitrary and capricious as a matter of law; rather, a reviewing court must "apply the presumption of validity" to the legislative action and evaluate whether the change was supported by some evidence of reasonableness.  *See Newberry Station*, 285 Va. at 621-23.

## B.  Weighing Statutory Factors

Hartley next contends that the downzoning denial was arbitrary and capricious because no evidence shows that the Board weighed the factors listed in Code §§ 15.2-2283 and -2284. These code sections list a myriad of factors to which a locality "shall . . . give reasonable consideration" when drafting zoning ordinances and amending zoning districts.  Code § 15.2-2283.  Describing an older version of these code sections, the Supreme Court wrote that "[t]hese sections set out the purpose of the zoning ordinances and . . . factors which a zoning authority must consider when taking zoning actions.  The weighing of the relevant factors is a legislative function . . . .  On judicial review, a court is limited to a determination whether the decision . . . was reasonable."  *Bd. of Supervisors v. Miller & Smith, Inc.*, 242 Va. 382, 384 (1991).

Hartley relies on *Newberry Station Homeowners Association, Inc. v. Board of Supervisors* for the proposition that the Board must have considered the factors listed in Code §§ 15.2-2283 and -2284.  *See* 285 Va. 604.  She asserts that the absence of specific evidence that the Board evaluated specific factors precludes summary judgment.  Hartley's reliance is misplaced.  In *Newberry Station*, the Supreme Court noted that

> while a local governing body acts arbitrarily and capriciously when
> it acts outside the scope of the authority conferred by the zoning
> ordinance, and the resulting action is void, we apply the
> presumption of validity when we review whether the local

- 10 -

> governing body adequately considered the standards set forth in the zoning ordinance.

*Id.* at 622-23 (internal citation omitted). The Supreme Court then applied the traditional burden-shifting reasonableness analysis for evaluating legislative actions. *Id.* at 623. The Court evaluated the reasonableness of the board's decision based on the factors laid out in the zoning ordinance. *Id.* at 623-26. However, there is no indication that the Court required the locality to record its evaluation of the ordinance factors. *See id.* Similarly, the lack of specific evidence that the Board considered the statutory factors in Code §§ 15.2-2283 and -2284 is not dispositive here. Failure to consider the statutory factors on the record does not render a legislative decision arbitrary and capricious as a matter of law. We must instead evaluate only whether the Board's decision was fairly debatable in the context of the required statutory factors.

### C. Reasonableness of the Downzoning Denial

Having rejected Hartley's procedural challenges to the Board's decision, we must determine whether the substance of the downzoning denial was arbitrary and capricious. Hartley argues that, had the Board properly evaluated the downzoning application under the factors in Code §§ 15.2-2283 and -2284, it would have been impossible to conclude that denying her application was proper. We begin with a presumption that the Board's downzoning denial was reasonable. *See Snell Constr. Corp.*, 214 Va. at 659. To overcome that presumption, Hartley must then put forward "probative evidence" that the B-1 classification was unreasonable and that the A-1 classification is reasonable. *See Harrell*, 236 Va. at 102. The Board may then meet that evidence with "some evidence" that the existing zoning classification is reasonable, sufficient to make the question "fairly debatable." *See id.* We presume that the Board was "cognizant at the time it acted of all existing facts and circumstances bearing upon the public policies and private rights relating to their action," such that we may consider evidence of reasonableness in the

pleadings, exhibits, and admissions—even if it was not before the Board in the legislative record. *Indus. Dev. Auth. v. La France Cleaners & Laundry Corp.*, 216 Va. 277, 282 (1975).

The reasonableness of a zoning decision must be evaluated in the context of the purposes of zoning ordinances:

> [Zoning] ordinances shall be designed to give reasonable consideration to each of the following purposes, where applicable: (i) to provide for adequate light, air, convenience of access, and safety from fire, flood, impounding structure failure, crime and other dangers; (ii) to reduce or prevent congestion in the public streets; (iii) to facilitate the creation of a convenient, attractive and harmonious community; . . . (v) to protect against destruction of or encroachment upon historic areas . . . ; (vi) to protect against . . . overcrowding of land, undue density of population in relation to the community facilities existing or available, obstruction of light and air, danger and congestion in travel and transportation . . . ; (vii) to encourage economic development activities that provide desirable employment and enlarge the tax base; [and] (viii) to provide for the preservation of agricultural and forestal lands . . . for the protection of the natural environment.

Code § 15.2-2283. Code § 15.2-2284 similarly offers several factors to which localities must give "reasonable consideration" in drafting zoning ordinances.[8] These purposes often conflict with one another, with the legislature delegating to local bodies to further these goals in each unique zoning decision. Further, the use of "where applicable" in Code § 15.2-2283 indicates

---

[8] Such factors include:

> the existing use and character of property, the comprehensive plan, the suitability of property for various uses, the trends of growth or change, the current and future requirements of the community as to land . . . the transportation requirements of the community, the requirements for airports, housing, schools, parks, playgrounds, recreation areas and other public services, the conservation of natural resources, the preservation of flood plains, the protection of life and property from impounding structure failures, the preservation of agricultural and forestal land, the conservation of properties and their values and the encouragement of the most appropriate use of land throughout the locality.

Code § 15.2-2284.

that the legislature understood that some factors would at times be irrelevant and some factors would weigh heavier than others in certain local contexts.

On appeal, Hartley claims that the Board's decision to deny her request to downzone her property was unreasonable because the Board disregarded its own comprehensive plan, which designated Ebony generally for agricultural or residential use in the future. As discussed above, Hartley misunderstands the role of the comprehensive plan in guiding Board decision-making. Assuming without deciding that the Board's downzoning denial was in fact inconsistent with the comprehensive plan, that fact alone is not enough to meet Hartley's burden of showing "probative evidence" that the existing B-1 designation was unreasonable. *Snell Constr. Corp.*, 214 Va. at 659; *see also Lerner*, 221 Va. at 37. Hartley also argues that reverting the subject property to A-1 "would render the parcel usage in conformity with not only Hartley's remaining 65 acres but also the surrounding rural residential community." This is perhaps sufficient to show that an A-1 designation would have been appropriate. But Hartley fails to allege that the B-1 designation was wholly unreasonable, except by suggesting that the Board's motives were tainted by a desire to perpetrate a false narrative and permit the Dollar General property to be upzoned. As we detail below in our discussion of Hartley's false narrative claim, we may not probe into the intentions of the locality, but look only at the facts in the record. *See Blankenship v. City of Richmond*, 188 Va. 97, 105 (1948). Here, Hartley failed to put forward sufficient probative evidence that the existing zoning designation was unreasonable to meet her burden.

Yet, even assuming that Hartley put forward "probative evidence" that the B-1 designation was unreasonable, the Board met its burden to put forward "some evidence of reasonableness" in response. *See Snell Constr. Corp.*, 214 Va. at 659. In its motion for summary judgment, the Board summarized the undisputed facts that support the reasonableness of retaining the existing B-1 designation:

- There is significant business and commercial type activity currently occurring adjacent to or near the [s]ubject [p]roperty, including the Race-In, Ebony General store and Homestead Antiques.
- [Hartley] herself sought rezoning of [the 1995 application property] from agricultural district to business district.
- [Hartley] sought rezoning of the [s]ubject [p]roperty from agriculture to business, and has admitted that the [s]ubject [p]roperty was appropriate for the business purposes described in her [r]esponses to the [requests for admission].
- Homestead Antiques received conditional zoning to the B-1 district.[9]
- The [comprehensive p]lan speaks approvingly of "new business investment," "business development," providing "employment and jobs," "expanding commercial and small business, and improved shopping opportunities," providing "grocery, post office, and convenience stores in the unincorporated communities" of the County.
- The [comprehensive p]lan provides that Ebony is included in a "growth area" that "continue[s] to represent good direction for land development in the future."
- The percentage of people living below poverty level in the County in 2015 was 23.5%, described as "particularly high."
- Over one half (50.5%) of persons in Brunswick County who are employed work outside of the County.
- County citizens with input into producing the [comprehensive p]lan rated the County's business development record as "poor" and were in favor of expanding business and attracting new employers.

These undisputed facts are enough to allow a reasonable person to logically conclude that the downzoning denial, which retained the subject property's B-1 status, would "encourage economic development" while "facilitat[ing] . . . a convenient, attractive and harmonious community." *See* Code § 15.2-2283. By retaining the B-1 designation in an area near other businesses, the Board could feasibly encourage business in Ebony, while also "provid[ing] for the preservation of agricultural and forestal lands" in the surrounding area. *See id.* This renders

---

[9] The Board infers from this that a reasonable property owner could have navigated the approval process in order to avoid the unrestricted B-1 zoning designation given to the subject property.

the issue "fairly debatable." Though Hartley raises concerns about the Board's characterization of the surrounding area and her purposes in seeking upzoning in the past, such factual disputes fail to go further than making the issue "debatable" among reasonable people—they cannot compel the Board to change the property's zoning between two reasonable designations. *See Wendy's of W. Va., Inc.*, 252 Va. at 18. Ultimately, Hartley fails to show a genuine dispute of material fact that would allow us to find the downzoning denial was not "fairly debatable." Therefore, we must affirm the decision of the Board.

### D. Denial of Landowner Rights

Hartley next asserts that the circuit court erred in granting summary judgment without addressing her landowner rights under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and the Virginia Bill of Rights. *See* U.S. Const. amends. I, IV, V, XIV; Va. Const. art. I, §§ 1, 11, 12. Hartley relies on two cases in which the Supreme Court found that the denial of a requested zoning amendment was arbitrary and capricious. *See Cnty. Bd. of Arlington v. God*, 216 Va. 163, 164 (1975); *City Council of Fairfax v. Swart*, 216 Va. 170, 172 (1975). In each, the Supreme Court followed the reasonableness framework for evaluating legislative actions. *See God*, 216 Va. at 164; *Swart*, 216 Va. at 172. At trial, the property owners in both cases adduced evidence that the existing zoning classification was "economically unfeasible" and unreasonable and that the proposed zoning classification was reasonable. *See God*, 216 Va. at 164; *Swart*, 216 Va. at 172. In both cases, the locality failed to introduce sufficient probative evidence of reasonableness to show that the proper zoning classification was fairly debatable. *See God*, 216 Va. at 164; *Swart*, 216 Va. at 172.

Here, taking Hartley's allegations as true, she failed to show that the B-1 classification was unreasonable. Her pleadings show that: (1) the comprehensive plan shows that most of Ebony is designated as A-1, (2) Hartley has a two-bedroom home on the subject property, (3) the

- 15 -

B-1 designation precludes residential uses, (4) Hartley wishes to reclaim the option to use the home as a residence, and (5) the only way to reclaim the option to use the home is by re-zoning the property to A-1.  Hartley has not alleged that the land cannot be feasibly used for business purposes, only that she desires to use the land differently.  "[W]hen . . . the existing zoning and the proposed zoning are both appropriate for the property in question, the legislative body has the prerogative to choose the applicable classification, not the property owner or the courts." *Wendy's of W. Va., Inc.*, 252 Va. at 18.  Because she failed to allege that the B-1 designation was unreasonable, the circuit court's grant of summary judgment was appropriate.  *See God*, 216 Va. at 164; *Swart*, 216 Va. at 172.

### E.  False Narrative Claim

Hartley's final challenge to the reasonableness of the downzoning denial alleges that because Hartley put forward substantial evidence that the downzoning denial was being used to support a false narrative about Ebony's zoning patterns, the circuit court erred in finding that "some evidence of reasonableness" existed to support the Board's decision.  In short, Hartley alleges that (1) though she submitted the 2003 application, the County incorrectly represented to her that B-1 zoning was necessary for the boat business and never communicated the implications of upzoning her property,[10] (2) the subject property was never separated from her remaining land and was taxed as A-1 property,[11] (3) she only discovered that the subject property was zoned as unconditional B-1 in 2019, (4) the Board suspiciously updated its zoning map in

---

[10] Though Hartley argues that she could have operated the boat business with an A-1 conditional use permit, she points to no part of the ordinance that allows such a use or to any other indication that such permission would have been available.  Thus, the advice to upzone to B-1 was sound.  *See* Brunswick Cnty. Zoning Ordinance art. 4-1.

[11] Though perhaps relevant to Hartley's understanding of the zoning of her property, as a factual matter, tax status and zoning status are distinct.  Any tax information is thus irrelevant to an inquiry about the Board's alleged false narrative.

2022 to reflect the approval of the 1995 application, which had previously been shown as A-1, suggesting an intent to create a false narrative about Ebony zoning, and (5) the Board improperly manipulated the public information about the B-1 zoning of these properties to push through the upzoning of the Dollar General property.

Ultimately, even taking as true the allegation that the Board was somehow improperly leveraging the existing zoning classification of her property to justify its decision to upzone the Dollar General property, Hartley fails to make sufficient allegations to entitle her to any legal relief. The downzoning denial need only have been "fairly debatable." *Snell Constr. Corp.*, 214 Va. at 659. "Courts are not concerned with the motives which actuate members of a legislative body in enacting a law." *Blankenship*, 188 Va. at 105. Rather, we must look to what the legislature knew or could have known which would justify its decision as reasonable. *See Indus. Dev. Auth.*, 216 Va. at 282 ("[W]hether deliberate or innocent, misrepresentations of facts and circumstances made before a legislative body will not invalidate legislative action if the evidence shows that any facts and circumstances existing at the time it was taken were sufficient to sustain it."). Based on the presence of businesses nearby, the goals in the comprehensive plan to increase economic development, and the lack of evidence that developing the property for B-1 uses was unfeasible, the Board put forward sufficient evidence of reasonableness to make the issue fairly debatable. *See Giordano*, 280 Va. at 608. Thus, we affirm the judgment of the circuit court, which found that the downzoning denial was "fairly debatable."

## II. Timing of Summary Judgment

Hartley also challenges the denial of her motion for a continuance of the hearing on the Board's motion for summary judgment. Hartley argues that (1) the circuit court erred because the hearing permitted Hartley insufficient time to respond to the motion, in violation of Rules 3:8(b) and 4:15(c), and (2) the court erred because of the timing of pretrial discovery. The denial

of a continuance is reviewed on appeal for an abuse of discretion and resulting prejudice to the moving party, "in view of the circumstances unique to each case." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007). Further, "when a circuit court's refusal to grant a continuance 'seriously imperil[s] the just determination of the cause,' the judgment must be reversed." *Id.* (alteration in original).

> An abuse of discretion occurs "only 'when reasonable jurists could not differ'" as to the proper decision. This highly deferential standard of review "necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." The circuit court "has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law."

*Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 764-65 (2014) (first quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008); then quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013); and then quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). We review questions of law de novo. *Brown v. Commonwealth*, 68 Va. App. 44, 51 (2017).

A. Application of Rules 3:8(b) and 4:15(c)

Hartley first argues that the circuit court erred when it denied Hartley's motion for a continuance because the court held the June 3, 2022 hearing only 22 days after the Board moved for summary judgment on May 12, 2022. Combining Rules 3:8(b) and 4:15(c), Hartley argues that such motions must be filed at least 28 days before the scheduled hearing. Rule 3:8(b) specifies that following the denial of a demurrer, or the grant of a motion craving oyer, the defendant has 21 days to file an answer. *See* Rule 3:8(b). The rule has no applicability to motions for summary judgment, which are addressed under Rule 4:15(c). That rule leaves the court with the discretion to set a briefing schedule for briefs longer than five pages, though it requires shorter briefs to be filed at least 14 days in advance of a hearing, with responses due seven days in advance. Rule 4:15(c). Hartley asserts that the rules should be read cumulatively,

- 18 -

with the seven-day quiet period before the hearing added to any court-ordered time for responding to the brief (which she erroneously views as 21 days based on Rule 3:8(b)). Ultimately, the rules suggest that the court has complete discretion to set the hearing and briefing schedule here. We cannot say that the court abused its discretion by proceeding to hold the hearing on summary judgment, particularly where the court also ordered both parties to provide supplemental briefing on the issue before it ruled.

### B. Grant of Summary Judgment as Related to Discovery

Hartley also argues that under the circumstances, the circuit court's grant of summary judgment was premature because it denied Hartley the opportunity to complete the discovery necessary to fully develop her theory of the case and gather evidence sufficient to prove her claims. "A trial court may enter summary judgment only if no material fact is genuinely in dispute." *Renner v. Stafford*, 245 Va. 351, 353 (1993); *see also* Rule 3:20. Summary judgment is not "intended to substitute a new method for trial when an issue of fact exists," but rather may "permit trial courts to end litigation at an early stage provided it *clearly* appears that one of the parties is entitled to a judgment in the case as made out by the pleadings and the parties' admissions." *Renner*, 245 Va. at 353.

Here, Hartley asserts several avenues of factual discovery that she would have explored, given more time, including the Board's alleged retroactive changes to the 2022 zoning map, the Board's efforts to create a narrative around its decision to upzone the Dollar General property, and the Board's efforts to comply with Code §§ 15.2-2283 and -2284. Yet, the only *material* factual issue in this case is whether "some evidence of reasonableness" supported the downzoning denial. *See Snell Constr. Corp.*, 214 Va. at 659. Other arguments about the Board's possible motives or the zoning status of neighboring properties are not material to that inquiry, as they cannot refute the evidence that the Board has put forward that the downzoning denial was

reasonable. Without some procedural defect, the Board's good showing of justification for denying the downzoning application meant that the Board was "clearly" entitled to a judgment in the case. *See Renner*, 245 Va. at 353. Thus, summary judgment was appropriate and the circuit court did not err in denying Hartley a continuance.

CONCLUSION

When reviewing the action of a legislative body, absent a procedural violation, we presume that the decision was correct and must affirm so long as the body can put forward "some evidence of reasonableness" to support its decision. Because Hartley's procedural allegations rest on incorrect interpretations of law and the Board put forward sufficient evidence that the existing B-1 classification was reasonable, we must defer to the judgment of the Board. Further, because no discovery or delay in granting the motion for summary judgment could have changed the result, the circuit court did not abuse its discretion in denying Hartley's motion for a continuance. We thus affirm the judgment of the circuit court.

*Affirmed.*